NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

APPLETON PRODUCTIONS, INC.

    *Plaintiff*,

 v.


AUTO SPORT GROUP, INC.

   and

GARY BLONDER

    *Defendants*.

Civil No.: 17-cv-3697 (KSH) (CLW)


**OPINION**


**Katharine S. Hayden, U.S.D.J.**

This matter comes before the Court by way of motion (D.E. 9) made by defendants Auto Sport Group Inc. and Gary Blonder (collectively "Auto Sport Group") to dismiss under Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, to transfer venue to the Southern District of Florida under 28 U.S.C. § 1404. Plaintiff Appleton Productions, Inc. ("API") sued Auto Sport Group on May 23, 2017, asserting various claims of fraud, conversion, and breach of contract (D.E. 1, "Compl.") stemming from a consignment agreement purporting to authorize Auto Sport Group to be the exclusive seller of API's 1939 Bugatti Pacifica (hereafter the "Bugatti") in exchange for a promise that $200,000 of any resulting proceeds would be given to API.

API claims that Auto Sport Group made several material misrepresentations during the negotiations and in the subsequent performance of the contract. Specifically, it alleges that Auto Sport Group stated that it found a buyer for the Bugatti when in fact there was never a buyer, and that it later surreptitiously sold the car and kept the full purchase price. For its part, Auto Sport

Group opposes on the basis that it lacks sufficient minimum contacts with New Jersey for this Court to have personal jurisdiction over it.

Terry Cook, President of API, in a sworn declaration that API attached to its opposition papers (D.E. 16-1, "Cook Decl."), said that in January 2017 he drove with his wife from New Jersey to Florida to take a two-week vacation. (Cook Decl. at ¶ 9.) As classic car hobbyists, they separately drove two from their collection, hoping they would be able to sell them at Mecum Auctions, a venue for selling classic cars in Kissimmee, Florida. *Id.* at ¶ 11. Cook drove the Bugatti, which is the subject of this lawsuit, and his wife drove the other car. *Id.* at ¶ 9.

Regrettably, none of the bidders at Mecum were interested, but there was still a backup plan. In the event that the other car did not attract a direct purchase, Cook had already negotiated a consignment arrangement with Jonathan Frank, a car dealer who was also attending the auction. *Id.* at ¶ 12. Frank worked at Auto Toy Store, a Florida consignment shop specializing in classic cars, and he approached Cook after the auction had ended, along with Gary Blonder, another dealer and an employee of Auto Sport Group, who was interested in the Bugatti. *Id.* at ¶¶ 15-17. Cook ultimately signed a consignment agreement with Auto Toy Store for the other car, and alleges that he reached an oral agreement with Blonder about a direct purchase of the Bugatti for $200,000. *Id.* at ¶ 19. According to Cook, they agreed that Blonder would take possession immediately, and pay for it in 30 days. *Id.*

Cook claims that 30 days passed and Blonder never delivered the $200,000. *Id.* at ¶ 20. Instead, on March 1, 2017, Blonder surprised Cook by faxing him a consignment agreement. *Id.* at ¶ 21. The contract, attached to API's complaint (D.E. 1, Ex. A), provides that Auto Sport Group "[a]grees to keep the vehicle on its premises and show the same for sale and to advertise the vehicle as it shall see fit." As for API's benefit of the bargain, the contract provides that

2

"[s]ubject to any subsequent agreement, [the] dealer agrees to pay the owner the sum of $200,000 from the proceeds of the sale, to be paid immediately upon receipt by Auto Sport of cleared funds." The agreement would last 90 days, subject to renewal, where Auto Sport Group would "have the exclusive right to sell the said vehicle." *Id.*

Cook signed the agreement and faxed it back to Auto Sport Group. Sometime afterward, Blonder told Cook that the only available buyer had offered $140,000 cash plus a used C63 Mercedes Benz, which he estimated to be worth $36,000. *Id.* at ¶ 28. Because there was a definite buyer, Cook claims that he viewed the deal favorably, so he sent Blonder the car's title and waited for the transaction to be completed. *Id.* at ¶ 32. After some more waiting, however, no money changed hands. Blonder conceded that a problem with the Florida DMV was holding up the transaction. *Id.* at ¶ 35. On April 25, 2017, Cook discovered that Auto Sport Group had in fact already sold the Bugatti at a classic car auction in Mostalgia, Texas without ever informing him or turning over the proceeds from the sale. *Id.* at ¶¶ 39-40.

API's complaint consists of five counts: (1) violation of the New Jersey Consumer Fraud Act; (2) fraud; (3) breach of contract; (4) unjust enrichment; and (5) conversion. On June 23, 2017, Auto Sport Group moved to dismiss the complaint for lack of personal jurisdiction (D.E. 9.) Auto Sport Group attached to its motion a sworn declaration made by Gary Blonder (D.E. 9-2, "Blonder Decl.") In it, Blonder states:

1. I am an employee and authorized representative of Auto Sport Group, Inc. ("Auto Sport Group"), one of the Defendants in this action.
2. Auto Sport Group is incorporated under the laws of the state of Florida.
3. Auto Sport Group's corporate office and principal place of business is located in Delray Beach Florida.
4. Auto Sport Group has no employees operating in New Jersey
5. Auto Sport Group does not own any real property in New Jersey.
6. Auto Sport Group is not registered to do business in New Jersey.
7. I do not own any real property in New Jersey.
8. Auto Sport Group does not lease any property in New Jersey.

3

9.  I do not lease any property in New Jersey
10. Auto Sport Group does not maintain any bank accounts in New Jersey.
11. I do not maintain any bank accounts in New Jersey.
12. None of Auto Sport Group's revenue for 2014, 2015, and 2016 was generated by business conducted in New Jersey.
13. The API Contract was negotiated in Florida.
14. Auto Sport Group did not perform any actions under the Contract with API in New Jersey.

*Id.*

On July 21, 2017, API opposed the motion, attaching Cook's declaration as support for invoking the Court's jurisdiction. According to Cook, along with the consignment agreement there were several "communication transmissions" directed to him by Auto Sport Group while he was in New Jersey. As he states in his declaration:

21. On March 1, 2017, while in New Jersey, I unexpectedly received a consignment agreement from Auto Sport and Blonder relating to the subject vehicle.
25. Furthermore, Blonder, from Florida, transmitted a communication to me, in New Jersey, that he already had a buyer for the subject vehicle.
26. Under duress, I, while in New Jersey, signed the consignment agreement on behalf of Appleton Productions, Inc.
28. Thereafter, Blonder, from Florida, transmitted a representation to me, in New Jersey, that his buyer could not actually pay the full $200,000.00, but promised to pay one hundred and forty thousand dollars ($140,000.00) plus a used C63 Mercedes Benz.
29. Blonder, from Florida, transmitted a communication to me, in New Jersey representing that this trade-in vehicle was worth at least thirty-five thousand dollars ($35,000.00).
30. Blonder, from Florida, transmitted representations to me, in New Jersey, that there was a define buyer, a definite deal and it would all be over soon.
31. Blonder, from Florida, transmitted a representation to me, in New Jersey, that he needed the vehicle's title to consummate this sale to his buyer.
34. However, as soon as I sent the vehicle title to Blonder, he, from Florida, transmitted a representation to me, In New Jersey that some issue was holding up the sale.
35. Despite my requests for a more specific explanation, Blonder, from Florida, was only able to articulate to me, in New Jersey, that the nature of this problem had something to do with the Florida Department of Motor Vehicles and that it prevented him and Auto Sport Group from paying me any sum of money promised.

(Cook Decl. at ¶¶ 21-35.)

**DISCUSSION**

The Court has carefully considered the submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1.  This Court may exercise personal jurisdiction over a non-resident to the extent authorized by state law, and New Jersey's long-arm statute extends to the full extent permitted by the Constitution.  *Telcordia Tech Inc. v. Telkom SA Ltd.,* 458 F.3d 172, 177 (3d Cir. 2006).  Establishing personal jurisdiction requires proof of a "relationship among the defendant, the forum, and the litigation."  *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977); *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir. 1998).

Personal jurisdiction over a defendant comes in two forms: first, where the contacts with the forum are so continuous and systematic that they render the defendant essentially "at home" in the jurisdiction (general jurisdiction), and second, where the alleged events arose out of defendant's limited contacts with the state (specific jurisdiction).  *Daimler AG v. Bauman*, 134 S. Ct. 746, 751, 754 (2014).  API argues that specific jurisdiction is appropriate.

To establish specific jurisdiction, the district court must engage in a three-prong inquiry: First, the defendant must have purposefully directed his activities at the forum.  Second, the plaintiff's claim must arise out of or relate to at least one of those specific activities.  Third, the Court may consider additional factors to ensure that the assertion of jurisdiction otherwise comports with fair play and substantial justice.  Because this analysis depends on the relationship between the claims and contacts, courts evaluate specific jurisdiction on a claim-by-claim basis. *O'Connor v. Sandy Lane Hotel Co., Ltd.,* 496 F.3d 312, 317 (3d Cir. 2007).  API has asserted two tranches of claims: breach of contract (Counts Three and Four) and intentional torts (Counts One, Two, and Five).

As a general matter, under Third Circuit law a contract by itself does not confer personal jurisdiction. *Grand Entertainment Group, Ltd. V. Star Media Sales, Inc.*, 988 F.2d, 476 482 (3d Cir. 1993) ("[A] contract alone does not automatically establish sufficient minimum contact in the other party's home forum."). In determining whether specific jurisdiction exists, courts consider "not only the contract but also 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties actual course of dealings.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463 (1985)).

API relies on *Lebel v. Everglades Marina, Inc.*, 115 N.J. 317, 324-25 (1989), arguing the following in its papers:

> The Court of *Lebel v. Everglades Marina, Inc., supra.*, held that New Jersey had specific jurisdiction in a case involving fraud in the sale of a boat to a New Jersey citizen by a Florida company. In *Lebel*, the Court held that the fact that the defendant never physically entered New Jersey did not preclude a finding of minimum contacts, so long as the defendant's conduct was specifically directed toward a New Jersey resident and it was aware that the transaction would have direct consequences in New Jersey.

(D.E. 16 at 13.)

But API's reliance on *Lebel* is misplaced, because its facts show that the defendant's contacts with New Jersey were far more extensive. The plaintiff bought a cigarette boat from the defendant in Florida after prolonged negotiations had already taken place while the buyer was in the forum state. *Lebel*, 115 N.J. at 32. Further, the defendant mailed the sales agreement to New Jersey, called the buyer in New Jersey many times over a period of two years to solicit the business, and later made numerous phone calls to iron out the contract. *Id.* Markedly, the defendant knew well before entering into the agreement that it was injecting a product (the cigarette boat) into the forum state, notwithstanding that a third-party was responsible for shipping. *See id.* ("*But when a merchant uses the instrumentalities of commerce to tap an*

*interstate market for its product*, such wire and mail communications are relevant contacts to be considered") (emphasis added).

By contrast, API claims that Auto Sport Group's contacts with New Jersey are grounded in a series of "communication transmissions," but API never really articulates the precise nature, frequency, or dates of those transmissions. For all the Court knows, the communications were conveyed through a single email, phone call, or text message. The remaining relevant contacts all occurred in Florida: the negotiations began there, where Cook originally traveled to solicit buyers; the car was exchanged there; and even the purported third-party buyers were all from out-of-state.

Significantly, the Third Circuit has long recognized that mere "informational communications in furtherance of [a contract between a resident and a nonresident] does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant]." *See Sunbelt Corp. v. Noble, Denton & Assoc., Inc.,* 5 F.3d 28, 32 (3d Cir. 1993) (citing *Stuart v. Spademan,* 772 F.2d 1185, 1193 (5th Cir. 1985) (stating that "an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws"); s*ee also Vetrotex v. Consol. Fiber Glass Prod. Co*., 75 F.3d 147 (3d Cir. 1996) (affirming district court finding that it lacked specific jurisdiction over the seller's breach of supply agreement suit, even though the buyer made some telephone calls in furtherance of the agreement, because the seller solicited supply agreement in the buyer's state, the agreement was negotiated in the buyer's state, and payments made under the agreement were made to the seller's office in the buyer's state); *Team First Consulting, LLC v. Hangliter*, No. 07-311, 2007 WL 1302440, at \*6 (D.N.J. Apr. 27, 2007) (Debevoise, J.) ("Because nothing in the

Complaint indicates that anything other than communications related to the alleged contract were sent to and from New Jersey, the court finds that it does not have personal jurisdiction over Plaintiffs' contract claims.").  Taken together, for the breach of contract claims, the Court finds that API has failed to establish the minimum contacts required to confer personal jurisdiction.

As for the intentional torts, API argues that personal jurisdiction is satisfied by the *Calder* "effects test" because Auto Sport Group directed the alleged fraud at API knowing it was located in New Jersey.  In some circumstances, a court may exercise personal jurisdiction over a non-resident defendant based on the effects of the defendant's intentional torts so long as the harm was expressly directed at the forum state.  *Marten v. Godwin* 499 F.3d 290, 297 (2007) (citing *Calder v. Jones,* 465 U.S. 783 (1984)) ("The effects test and traditional specific jurisdiction analysis are different, but they are cut from the same cloth.").  The Third Circuit has interpreted the *Calder* effects test to allow the plaintiff to demonstrate personal jurisdiction by satisfying the following three elements:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Id.* (citing *IMP Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 265–66 (3d Cir.1998)).

Under the *Calder* effects test, a defendant may not be "haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state."  *Id.*  Thus, to demonstrate personal jurisdiction, the plaintiff must show that "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.* at 297–98 (internal

quotations and citations omitted).  It is not enough to "simply assert[ ] that the defendant knew that the plaintiff's principal place of business was located in the forum." *Id.*

The Court agrees with Auto Sport Group that API fails to point out the *specific activity* that shows the defendants expressly aimed the tortious conduct at New Jersey— insofar as the forum state was the focal point of the act.  As Auto Sport Group put it in its motion: "While BLONDER did communicate with API in New Jersey in performance of the contract, he only did so because API was located in New Jersey. He could just as easily have contacted API in Wisconsin, New York, or Alaska had API instead chosen to operate there." (D.E. 9-1 at 17) (internal citations omitted.)  Neither the complaint nor Cook's declaration even specify the method of communication used to commit the alleged fraudulent conduct, let alone establish that the communications were intentionally directed at New Jersey.  And even if Auto Sport Group knew that API's principal place of business was in New Jersey, and that API felt the brunt of the harm from the fraud in New Jersey, the argument still fails on the third prong.  *See e.g., Voltaix LLC v. NanoVoltaix, Inc.,* No. 09–142, 2009 WL 3230887, at *3 (D.N.J. Oct.1, 2009) (Thompson, J.) (defendant's awareness of plaintiff's presence in New Jersey and that the brunt of the harm would be felt in New Jersey only established foreseeability, and not the "deliberate targeting of the forum state required for the exercise of personal jurisdiction"); *Edelson V, L.P. v. Encore Networks, Inc.*, CIV. 2:11-5802 KM, 2012 WL 4889439, at *5-6 (D.N.J. 2010) (*report and recommendation adopted sub nom Edelson V, L.P. v Encore Networks, Inc.*, CIV. 2:11-5802 KM, 2012 WL 489 1695 (D.N.J. 2012) (finding defendant's alleged fraudulent misrepresentations insufficient to demonstrate that defendant "expressly aimed" defendant's conduct at New Jersey or "manifested behavior intentionally targeted at and focused on the forum.").

In sum, the Court finds that it lacks specific personal jurisdiction over Auto Sport Group based on the facts alleged in API's complaint and Cook's declaration.  For the reasons set forth above, the defendant's motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) shall be granted, and its motion to transfer venue pursuant to Fed. R. Civ. P. 12(b)(3) shall be denied as moot.  An appropriate Order will be issued.

s/ Katharine S. Hayden_____<br>
Katharine S. Hayden, U.S.D.J.

Dated: June 27, 2018